**STATE of Missouri, Plaintiff–
Respondent,**

v.

**Michael J. TEASTER, Defendant–
Appellant.**

No. 21484.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 19, 1998.

---

. . .

John M. Schilmoeller, Asst. Public Defender, St. Louis, for Defendant–Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel W. Follett, Asst. Atty. Gen., Jefferson City, for Plaintiff–Respondent.

BARNEY, Judge.

Upon trial by jury, Michael Teaster was found guilty of driving while intoxicated as defined and proscribed by section 577.010.[1] The trial court sentenced Mr. Teaster, as a prior and persistent offender, to ten years' imprisonment in the Missouri Department of Corrections. §§ 558.011.1(4); 577.023.1; 558.016; 557.036. In his appeal from his judgment of conviction, Mr. Teaster raises one point of trial court error. He argues that the trial court erred in not sustaining his motion for a judgment of acquittal at the close of all of the evidence. Mr. Teaster maintains that the state failed to produce sufficient evidence from which a jury could have found him guilty beyond a reasonable doubt of operating his motor vehicle while under the influence of alcohol. We disagree.

"When reviewing the sufficiency of the evidence supporting a criminal conviction, this Court must view all of the evidence, together with any reasonable inferences that may be drawn therefrom, in the light most favorable to the State and must disregard all evidence and inferences to the contrary." *State v. Woodworth,* 941 S.W.2d 679, 686–87 (Mo.App.1997)(quoting *State v. Silvey,* 894 S.W.2d 662, 673 (Mo. banc 1995)). "We neither reweigh the evidence, nor determine the reliability or credibility of witnesses." *Id.* at 687. "Review on appeal is limited to a 'determination of whether there was sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt.'" *Id.*(quoting *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989)); *see also State v. Copeland,* 928 S.W.2d 828, 847 (Mo. banc 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 981, 136 L.Ed.2d 864 (1997); *State v. Maggard,* 906 S.W.2d 845, 848 (Mo.App.1995).

On the night of July 20, 1995, Troopers Arnold and Davis of the Missouri State Highway Patrol were patrolling Route J in Laclede County, Missouri. They noticed a pickup truck approaching them with only one headlight illuminated. Trooper Arnold, who was driving, turned on his emergency lights and watched the truck in his rearview mirror while he was turning his patrol car around. Trooper Arnold saw the truck make an abrupt right turn off of Route J. They followed the truck onto a gravel road. It eventually parked in front of an apartment complex.

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

Upon approaching the vehicle Trooper Arnold asked the driver for his driver's license and noted a strong odor of "intoxicants," or alcoholic beverages, coming from the driver of the truck, Mr. Teaster. Mr. Teaster was then asked to alight from the truck and as he did Trooper Arnold observed that Mr. Teaster was "unsteady on his feet," that he "walked slowly" and "swayed and stumbled." Mr. Teaster admitted having drunk "a few beers." Mr. Teaster's "speech was slurred and he mumbled quite a bit" when he talked. His eyes were "glassy and bloodshot."

Trooper Arnold conducted a series of field sobriety tests. He administered a "horizontal gaze nystagmus" test, which involved watching Mr. Teaster's eyes for signs of "involuntary twitching" as they tracked Trooper Arnold's finger. Neither of his eyes "smoothly" followed Trooper Arnold's fingers; they periodically jerked involuntarily. Trooper Arnold testified that such responses usually indicated that the subject was intoxicated. Additionally, Trooper Arnold administered the "Rhomberg Internal Clock" test, which involved observing Mr. Teaster's balance as he stood with his head tilted back and his eyes closed. The test also involved an observation of how Mr. Teaster estimated time. Trooper Arnold testified that in confirming signs of intoxication he was looking for "an exaggerated amount of body sway, perhaps muscle rigidness or eye tremors." Trooper Arnold further testified that Mr. Teaster's body exhibited "an exaggerated sway of approximately two to three inches" and that Mr. Teaster had eye tremors (an involuntary shaking of the eyes). Also, Mr. Teaster estimated eleven seconds to be thirty seconds.

Mr. Teaster was then asked to perform a "walk-and-turn" test, consisting of taking nine steps, heel-to-toe, along an imaginary, straight line, counting the steps aloud and keeping his hands at his sides. He "performed poorly." He lost his balance both while Trooper Arnold was describing the test and during his attempt at completing the test. Also, Mr. Teaster did not take steps heel-to-toe, as instructed, and did not count his steps aloud.

Lastly, Mr. Teaster was requested to perform two other tests, the "one-leg" stand and the "finger-to-nose test." During his attempt at the former test he swayed and used his arms for balance, whereas in performing the latter test, Trooper Arnold testified that Mr. Teaster used the pads of his fingers to touch his nose, rather than the tips, twice touching the bridge of his nose.

The troopers concluded that Mr. Teaster was intoxicated and he was arrested for driving while intoxicated and was advised of his *Miranda* rights.[2] Trooper Arnold testified that after Mr. Teaster's arrest, Mr. Teaster told him that he had a bad knee, but denied he was undergoing medical treatment. It was also at this point in time that Mr. Teaster told Trooper Arnold that he had consumed "nine beers," between 5:00 and 10:00 p.m. that evening.

Mr. Teaster presented no corroborating evidence regarding his bad knee, nor did he present any witnesses on his own behalf, nor did he testify. A photograph of his person was introduced into evidence by stipulation of the parties.

"[T]he state is *not* required to produce results of chemical tests to prove intoxication." *State v. Ruark,* 720 S.W.2d 453, 454 (Mo.App.1986). " 'Intoxication' is a 'physical condition' usually evidenced by unsteadiness on the feet, slurring of speech, lack of body coordination and an impairment of motor reflexes." *Id.; see also Maggard,* 906 S.W.2d at 849. "Whether a defendant is intoxicated may be proven by any witness who had a reasonable opportunity to observe him." *Maggard,* 906 S.W.2d at 849. When properly qualified by professional background and experience, a law enforcement officer who has had sufficient opportunity to observe the accused may testify as an expert witness. *See State v. McHaffie,* 762 S.W.2d 875, 877 (Mo.App.1989); *State v. Wilson,* 846 S.W.2d 796, 798 (Mo.App.1993). Trooper Arnold had been a highway patrolman for two years. He had received 24 weeks of specialized law enforcement training, including training relating to driving while intoxicated. Trooper Davis was a five-year veteran of the Missouri

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Highway Patrol. They both observed Mr. Teaster's physical conditions very shortly after he alighted from his pick-up truck, during the evening of July 20, 1995. They both testified that Mr. Teaster was operating his pick-up truck while in an intoxicated condition.

As heretofore noted, "[c]redibility and weight of testimony are for the jury to determine." *State v. Shinn*, 921 S.W.2d 70, 73 (Mo.App.1996). "A jury may believe all, some or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case." *Id.* "The jury is entitled to accept the state's evidence as true, and to make reasonable inferences based on that evidence." *Id.*

We conclude, therefore, that there was sufficient evidence to convince a jury beyond a reasonable doubt that Mr. Teaster was intoxicated at the time he was observed driving his pick-up truck during the evening of July 20, 1995. The judgment of conviction is affirmed.

PARRISH, P.J., and SHRUM, J., concur.